50 N.J. Super. 506 (1958)
142 A.2d 910
THERESA SCHAUBLIN, PLAINTIFF-RESPONDENT,
v.
WALLACE R. LEBER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 5, 1958.
Decided June 19, 1958.
*508 Before Judges STANTON, HALL and GAULKIN.
Mr. Frederick Klaessig argued the cause for plaintiff-respondent (Mr. Robert H. Muller, attorney; Mr. Klaessig on the brief).
Mr. Samuel A. Larner argued the cause for defendant-appellant (Messrs. Marley, Winkelried & Hillis, attorneys).
The opinion of the court was delivered by GAULKIN, J.A.D.
Plaintiff, a pedestrian, recovered a judgment following a jury verdict in the Hudson County District Court, for the injuries she sustained when her head came into contact with the open rear window of defendant's parked station wagon, which extended horizontally seven to eight inches beyond the rear bumper, at a height of about 5 1/2 feet above the pavement. Defendant appeals, asserting that the trial court should have granted his motion for involuntary dismissal at the end of plaintiff's case, and for judgment at the end of the entire case, because the evidence failed to show negligence or proximate cause, and did show contributory negligence.
The accident happened near the intersection of Dodd Street and Palisades Avenue, Weehawken. In determining whether the trial judge should have taken the case from the jury, we must take that view of the evidence most favorable to the plaintiff. Indeed, most of the facts are not in substantial dispute. About 9 P.M. of a June evening the plaintiff was crossing Dodd Street from the south-easterly corner of the intersection to a drug store on the northeasterly corner. The drug store was one of a group of business buildings, fronting on the easterly side of Palisades Avenue, which were set back farther easterly from Palisades Avenue than the dwelling houses which filled the rest of the block. This created a wide sidewalk plaza in front of the business buildings, at the northeast corner of Palisades Avenue and Dodd Street.
Photographs in evidence showed that there was a marked crosswalk across Dodd Street. The lines were of white *509 paint, but broken, extending a few feet from the south side of Dodd Street and less from the north side, with a large gap in the middle which was not outlind at all. The easterly of these painted lines was in line with the setback of the dwelling houses in the block toward which plaintiff was walking. Consequently, one crossing within the painted lines from the southerly side of Dodd Street to the sidewalk on the northerly side would find himself about 20 feet from the door of the drug store.
Defendant parked his station wagon on Dodd Street, facing west, parallel to the northerly curb, and about two feet east of the crosswalk indicated by the painted lines. The station wagon was about 12 feet long. That placed the rear of the vehicle west of the entrance of the drug store. Defendant left the rear window open, projecting horizontally outward seven to eight inches beyond the bumper. The station wagon was described as about 5' 8" high. About three feet behind the station wagon another car was parked. The station wagon was unattended and without lights. The drug store was brightly lit, but that put in shadow the side of the station wagon which plaintiff faced. There were no traffic lights at the intersection.
Plaintiff, 72 years old and about 5' 7" tall, with her dog on a leash, stepped off the south curb of Dodd Street. The Palisades Avenue sidewalk in the block she was leaving was about ten feet wider than the outlined crosswalk. Instead of crossing within the marked crosswalk, she headed at an angle northeasterly across Dodd Street, directly toward the door of the drug store. As she attempted to pass behind defendant's vehicle her head struck the corner of the open window, which she had not seen before, even though she had been looking straight ahead. Hair from her head was found on the southerly corner of the window.
Defendant argues, in his brief, that leaving the window open and extended under the above circumstances was not negligent because there were "no unusual facts * * * which would serve to warn the defendant of the probability of an individual seeking to cross the street by squeezing *510 between the rear of his vehicle and the vehicle parked behind it."
The test of negligence in this situation, as in any other case, is whether a reasonably prudent man at the time and under the circumstances should foresee an unreasonable risk or likelihood of harm or danger to someone else. 2 Restatement of Law, Torts, secs. 282, 284(a), 289, 302(b); 2 Harper and James, Law of Torts, pp. 928, 936; Prosser on Torts (2d ed.), p. 119; Martin v. Bengue, Inc., 25 N.J. 359, 371 (1957); Harpell v. Public Service Coordinated Transport, 35 N.J. Super. 354, 360 (App. Div. 1955), affirmed 20 N.J. 309, 316 (1956). The test does not encompass every possible risk of harm. Generally it is for a jury to say what the reasonable man would foresee, since its decision is thought most likely to accord with commonly accepted standards. The courts allow wide latitude to the jury, restricting their sphere sparingly, on an ad hoc basis, where one conclusion only seems warranted by the facts. 2 Harper and James, Law of Torts, pp. 936-937.
The jury was entitled to find that the space between the cars did not require "squeezing." Defendant must be held to know what everyone knows, that very many people do ignore crosswalks, and cross streets in the middle of the block between parked cars. "Anyone with normal experience is required to have knowledge of the traits and habits * * * of other human beings." Prosser on Torts (2d ed. 1955), sec. 32, p. 138; Martin v. Bengue, Inc., supra.
A parked vehicle is an obstruction upon the highway, and even when placed there at a time and place permitted by statute and ordinance, the operator must exercise that care which is reasonable under the circumstances to prevent the vehicle, its equipment and its load, from injuring others. 2 Blashfield Encyclopedia of Automobile Law and Practice (1951), sec. 1209, p. 83; Annotation, "Liability for injury due to projection of obstruction beyond body of vehicle," 36 A.L.R. 455; Safety Tire Service v. Murov, 19 La. App. 663, 140 So. 879 (Ct. App. 1932); *511 Judy v. Doyle, 130 Va. 392, 108 S.E. 6 (Sup. Ct. App. 1921); Bard v. Baker, 283 Mich. 337, 278 N.W. 88 (Sup. Ct. 1938); Adams v. Fields, 308 Pa. 301, 162 A. 177 (Sup. Ct. 1932); Flynn v. Bledsoe Co., 92 Cal. App. 145, 267 P. 887, 892 (D. Ct. App. 1928). See also Sokiera v. H.A. Jaeger, Inc., 12 N.J. Misc. 17 (Sup. Ct. 1933), affirmed per curiam 112 N.J.L. 500 (E. & A. 1934); Girdwood v. Balder, 6 N.J. Misc. 302 (Sup. Ct. 1928); cf. Annotation, "Liability for injury to one in street struck by door or gate swinging outwards from abutting property," 77 A.L.R. 1116.
In Safety Tire Service v. Murov, supra, plaintiff's moving vehicle collided with the tail gate of defendant's parked truck. The court held (140 So. at page 880):
"The only part of the parked truck that came in contact with plaintiff's truck was the left rear corner of the end gate. If the end gate had been closed, plaintiff's truck would have passed without a collision and the resulting damage.
When its driver left the truck parked partly on the side of the road, it was his duty to see that it was as far off the road and created as little obstruction in the road as possible. There was no necessity for the end gate to be open, and the very fact that it was open caused the truck to be more of an obstruction in the road than it would have been had the end gate been closed. It was negligence for defendant's driver to leave the end gate open and extending over the road."
In Judy v. Doyle, supra, the defendant parked his truck between two cars. The opinion says (108 S.E. at page 7): "* * * There was very little space between the truck and the car next down the street, and about 3 feet space between [the truck] and the car next above * * *." The defendant left mower blades in the back of his truck, projecting into the three-foot space. The plaintiff was riding a bicycle, and in an effort to avoid an on-coming automobile he turned into the three-foot space and ran into the blades. The judgment against the owner of the truck was affirmed by the Supreme Court of Appeals of Virginia, which said (108 S.E. at page 9):
*512 "Undoubtedly the defendants enjoyed the right to park their car on the street, and for the extent of time allowed by law, they were entitled to the use of the space so occupied. But they had no right to occupy measurably the space between their truck, and the next car above it, with a vicious and dangerous implement liable to inflict injuries upon others exercising ordinary care in their use of the streets. * * *
* * * Doubtless the defendant, when he parked his car, did not anticipate the concurrence of circumstances which resulted in the injuries suffered by the plaintiff; but if this act of his was a negligent one, and in our judgment it was, the defendant's liability does not depend upon his ability to foresee the ensuing circumstances in precise detail. * * *"
The issue of negligence, in the case at bar, was therefore properly for the jury. For the same reasons, it was not error to submit the question of proximate cause to the jury. Mitchell v. Friedman, 11 N.J. Super. 344, 347 (App. Div. 1951); Martin v. Bengue, Inc., supra.
Under the testimony the issue of plaintiff's contributory negligence also was for the jury. "Only in the clearest case of contributory fault, where the contrary hypothesis is not fairly admissible, does the question become one of law for decisive action by the court." Battaglia v. Norton, 16 N.J. 171, 179 (1954). Failure of a pedestrian to cross within a crosswalk is not conclusive evidence of contributory negligence even when struck by a moving vehicle. Whether the plaintiff here made reasonable observation, the lighting conditions, whether it was reasonable for her to pursue the path she did, whether her attention was upon her dog instead of upon her path, and all other matters which enter into the complex of contributory negligence, were matters for the jury to decide. Girdwood v. Balder, supra.
The appellant raises the further point that the trial judge erred when he instructed the jury that, if it found the defendant had parked his vehicle in violation of R.S. 39:4-138(e), it had the right to consider that violation as evidence of negligence, to be weighed with all of the other testimony in the case. Appellant argues that this was error because, if there was such a violation, it had no causal connection with the injury, and was not a proximate cause *513 of the accident. Formichella v. Layton, 25 N.J. Super. 1 (App. Div. 1953); Burke v. Auto Mart, Inc., 37 N.J. Super. 451 (App. Div. 1955), certification denied 20 N.J. 304 (1956); Boody v. Good Bros., Inc., 31 N.J. Super. 439 (App. Div. 1954), affirmed per curiam 17 N.J. 393 (1955); Perry v. Public Service Coordinated Transport, 136 N.J.L. 398 (Sup. Ct. 1947); Powers v. Standard Oil Co., 98 N.J.L. 730 (Sup. Ct. 1923), affirmed per curiam 98 N.J.L. 893 (E. & A. 1923).
However, appellant's trial counsel made no objection to the charge. R.R. 4:52-1 provides that "no party may urge as error any portion of the charge * * * unless he objects thereto * * *," but appellant's present counsel argues that the charge was "plain error" which this court should "notice" under R.R. 1:5-3(c).
An examination of the typewritten transcript of the trial reveals that, before the lawyers summed up, there was a long discussion of the requests to charge submitted by each side. Plaintiff's lawyer requested the charge relating to R.S. 39:4-138(e), and defendant's trial counsel did not object. On the contrary, defendant's trial counsel asked that the judge charge also on R.S. 39:4-34 (relating to a pedestrian's crossing within crosswalks), which appellant's present counsel concedes has as little to do with this case as he claims R.S. 39:4-138(e) does, and should not have been requested.
Defendant's counsel thereafter mentioned both statutes in his summation, and discussed the testimony which had been introduced bearing upon them. When the judge finished his charge, he asked whether counsel had any "further requests or changes which you ask me to make in my charge." Defendant's counsel answered "No, sir."
After the verdict came in, defendant moved for a new trial. The argument of the motion, almost three weeks after the verdict, fills 46 pages of the typewritten transcript, but trial counsel never once criticized the charge.
"The object of an appeal is to correct errors properly noted below  not to retry a case." Locks Laboratories, Inc., *514 v. Bloomfield Molding Co., 35 N.J. Super. 422, 429 (App. Div. 1955). This is the type of case in which R.R. 4:52-1 should be strictly enforced.
Appellant also contends that the verdict was against the weight of the evidence, and the result of mistake, prejudice or passion. The jury had the right to find the facts as they have been stated above, hence the reasons given in disposing of the other points dispose of this one as well.
Affirmed.