172 N.J. Super. 436 (1980)
412 A.2d 821
JOHN BERKO, PLAINTIFF,
v.
RALPH FREDA AND PAUL HARRIGAN, DEFENDANTS, AND RALPH FREDA, THIRD-PARTY PLAINTIFF,
v.
JOHN DOMBRAUSKAS, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division  Union County.
Decided January 8, 1980.
*437 Stanley W. Greenfield for plaintiff (Greenfield & Greenfield, attorneys).
Greg Riley for defendant and third party plaintiff (McDermott & McGee, attorneys).
GRIFFIN, J.S.C.
Defendant Freda left his keys in his car. It was stolen. Police Officer Berko, plaintiff, having received a report by radio, saw the car and gave chase. He contends that his police car was intentionally rammed three times and that the thief, after the cars were stopped, intentionally stepped on the accelerator while he had his arm in the open door. Officer Berko was dragged and injured.
Defendant's motion for summary judgment is based on two theories. Neither has been previously considered in any reported New Jersey decision.

I
Is defendant, who left his keys in the car, liable for intentional injuries inflicted by use of the car?
An owner who has left his keys in a vehicle has been held liable for the negligent acts of the thief. Hill v. Yaskin, 75 N.J. *438 139 (1977); Zinck v. Whelan, 120 N.J. Super. 432 (App.Div. 1972). Both these cases cited the rising statistics of car thefts as a result of keys being left in the ignition and the extraordinary correlation between thefts and accidents. This court knows of no such correlation between car theft and the use of the car as an instrument of intentional tort.
The basic test of negligence is foreseeability. Both Hill and Zinck, supra, held that the question should be left to the jury when the thief's negligence resulted in injury.
The intervening criminal act of a third person does not insulate a defendant if such intervening act is reasonably foreseeable. A landlord has been held liable for the criminal act of a burglar in a case where the landlord failed to repair a door lock after a request by the tenant. Braitman v. Overlook Terrace Corp., 68 N.J. 368 (1975). In Braitman it was held reasonably foreseeable that a defective lock might be a factor in a burglary. However, a case closer to this situation is Dwyer v. Erie Investment Co., 138 N.J. Super. 93 (App.Div. 1975). Plaintiff was a subcontractor installing some plumbing fixtures in a building owned by the defendant. Plaintiff was working on the second floor of the building. Some time before the date of the incident complained of, plaintiff had discovered a hole on the outside of the building between the first and second floors. This hole was large enough for a man to crawl through and thus gain entrance to the offices inside the building. There was also evidence to indicate that the building was in an urban area with a considerable amount of crime. Plaintiff saw a man emerging from the hole in the outside of the building. When plaintiff's demand that the man identify himself went unanswered, he grabbed a metal garbage can and hurled it at the intruder. The suspected burglar then fired a gun at plaintiff, wounding him. The Appellate Division affirmed the dismissal of the complaint. Essentially, the court concluded that while it may have been foreseeable that a burglar would enter the building through the hole, it was not reasonably foreseeable that the burglar would *439 shoot the plaintiff as he was leaving the premises. As Judge Larner reasoned:
Perhaps it was foreseeable because of the failure to repair the hole in the wall that an intruder or burglar might utilize that hole to enter the premises. It is, however, beyond the scope of reasonable foreseeability for a property owner to anticipate that an intruder would exit from that opening and use a gun from outside the building to injure a person performing work inside the building. In simple terms, the presence of the hole as such is too remote to be considered as a causative factor of the act of shooting which took place outside the structure. Reasonable men and women on a jury could not conclude that the passive condition of the opening was a substantial factor in producing the act of the criminal or the injury to the victim. [at 101]
The Dwyer court, quoting from Restatement Torts 2d, § 435(2), suggested the following test to determine whether an act of a tortfeasor is a legal cause of harm:
... The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm. [at 101]
A review of the reported cases in all 50 states does not reveal one case where an owner of a vehicle was sued for the intentional acts of a thief as a result of the owner having left his keys in the vehicle.
While it may be reasonably foreseeable that a car thief will use a car negligently, it is hardly reasonably foreseeable that he will use it in an intentional act which amounts to an assault. The test is reasonable foreseeability not possibility or conceivability. To hold otherwise in this case would be almost akin to leaving to a jury the negligence of a farmer who leaves his barn door unlocked, has his ax stolen and used in an assault.
This court feels that, as a matter of law, a reasonably prudent person would not foresee that his act of leaving the keys in the car would result in the use of the car as a weapon.
*440 The court appreciates that "The role of the judge in deciding a motion for summary judgment is to decide whether there is a genuine issue of fact, not to decide the issue if he finds it to exist." Palmisano v. Ehrig, 171 N.J. Super. 310 (App.Div. 1979). However, the Palmisano case involved firearms and turned on the fact that these have been held to be inherently dangerous instrumentalities. In New Jersey, as in most jurisdictions, the automobile is not considered an inherently dangerous instrumentality. State v. Gooze, 14 N.J. Super. 277 (App. Div. 1951).

II
The second issue presented is whether plaintiff is barred from recovery because of his status as a police officer. Should the so-called fireman's rule be applied to policemen?
New Jersey follows the generally accepted rule to the effect that, at least in the absence of willful misconduct or the violation of a statute or ordinance, the owner of property who negligently starts a fire is not responsible for injuries to a fireman in fighting the fire. See Krauth v. Geller, 31 N.J. 270 (1960), and Ferraro v. Demetrakis, 167 N.J. Super. 429 (App.Div. 1979).
Chief Justice Weintraub held in Krauth, supra:
... That the misfortune here experienced by a fireman was well within the range of foreseeability cannot be disputed. But liability is not always co-extensive with foreseeability of harm. The question is ultimately one of public policy, and the answer must be distilled from the relevant factors involved upon an inquiry into what is fair and just. [31 N.J. at 273]
... Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences. Hence, for that risk, the fireman should receive appropriate compensation from the public he serves, both in pay which reflects the hazard and in workmen's compensation benefits for the consequences of the inherent risks of the calling. [at 274]
*441 "This rule was born almost a century ago, earning nearly unanimous acceptance." Walters v. Sloan, 20 Cal.3d 199, 202, 571 P.2d 609 at 611, 142 Cal. Rptr. 152 at 154 (Sup.Ct. 1977).
The fireman's rule was extended to police officers in Whitten v. Miami-Dade & Sewer Auth., 357 So.2d 430 (Fla.App. 1978). Plaintiff police officers were injured by the inhalation of chlorine gas. They attempted to recover against owners of the plant for negligent maintenance. Recovery was denied in the absence of wanton and willful misconduct. Subsequently, the case of Wilson v. Florida Processing Co., 368 So.2d 609 (Fla.App. 1979), arose with a strikingly similar factual situation. Plaintiff, a police officer, was injured by the inhalation of chlorine gas while evacuating residents of the town. The injury did not occur on defendant's premises. It was held that in the absence of willful or wanton misconduct a policeman cannot recover for injuries sustained while doing precisely what he was hired to do.
The California Superior Court in Walters v. Sloan, supra, presents an excellent analysis of the reasons why the rule should apply to policemen. In that case the officer was assaulted while attempting to arrest a disorderly person who became intoxicated at a party at defendant's home.
The principle denying recovery to those voluntarily undertaking the hazard causing injury is fundamental in a number of doctrines, including nullification of the duty of care, satisfaction of the duty to warn because the hazard is known, contributory negligence, and assumption or risk, as well as in the fireman's rule. [Cases cited]. It is unnecessary to attempt to separate the legal theories or to catalog their limitations. The rule finds its clearest application in situations like that before us  a person who, fully aware of the hazard created by the defendant's negligence, voluntarily confronts the risk for compensation. [571 P.2d at 612, 142 Cal. Rptr. at 155]
The court then considered the question of public policy, extensively quoting Chief Justice Weintraub in Krauth v. Geller, supra, including the above quoted portion of that case.
*442 As New Jersey applies the rule to firemen, the same reasoning compels its application to policemen.
The case of Hill v. Yaskin, supra, involved injuries to a police officer received while pursuing a stolen car. Recovery was permitted against the owner who had left his key in the ignition. Obviously, the injuries were sustained while he was doing what he was hired to do. However, the argument concerning the fireman's rule apparently was not raised. It was not considered by the court.
Here the plaintiff was injured while attempting to arrest the youth who stole the car. The theft occurred in part because the defendant negligently left his keys in the car. How can this be distinguished from the fireman situation? Shall recovery be permitted the policeman who is injured while arresting a thief with stolen property simply because the owner of the property did not take every reasonable precaution (perhaps by leaving a house window unlocked) to protect against the theft?
Defendant Freda's motion for summary judgment is granted on both grounds.