232 N.J. Super. 232 (1989)
556 A.2d 1262
JOSEPH CELLA, PLAINTIFF-APPELLANT,
v.
INTERSTATE PROPERTIES, JOHN SMITH (A FICTITIOUS NAME FOR AGENT, SERVANT AND/OR TENANT), JAMES SMITH (A FICTITIOUS NAME FOR MAINTENANCE COMPANY), JOHN ROES (A FICTITIOUS NAME AS AGENT, LESSEE, CONTROLLER AND/OR MAINTAINER, JOHN DOE (A FICTITIOUS NAME AS INSTALLER, RETAILER), INDIVIDUALLY, JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 1989.
Decided April 13, 1989.
*234 Before Judges ANTELL, DREIER and CONLEY (temporarily assigned).
Laurence P. Bafundo argued the cause for appellant (Friedman, Bafundo, Ginsberg & Porter, attorneys; Laurence P. Bafundo, on the letter brief).
John Varjabedian argued the cause for respondents (John Varjabedian, on the letter brief).
The opinion of the court was delivered by DREIER, J.A.D.
Plaintiff appeals from a summary judgment granted in the Law Division dismissing his negligence complaint against Interstate Properties, the owner and operator of a shopping center located in Washington Township. At the time of his accident, plaintiff was a police sergeant on patrol. After calling on his radio for a backup, plaintiff exited his vehicle to investigate a suspicious car located in the shopping center's parking lot. He fell when he slipped on ice that had formed in a depressed area of the lot.
We are somewhat hampered in our decision of this matter by the lack of a detailed record. Plaintiff's counsel has filed a certification pursuant to R. 2:5-3(e) in lieu of a transcript. By *235 that certification we are informed that the decision was rendered on the return date of a motion to strike the complaint by virtue of the application of the "fireman's rule." This motion, basically one for summary judgment, was decided without oral argument on the basis of briefs submitted to the trial judge. No certifications were submitted. However, attached to the trial briefs were an extract from plaintiff's answers to interrogatories (submitted by defendant) and plaintiff's initial expert's report claiming that the lot was improperly maintained in that it contained a depression likely to collect water which would freeze in cold weather (submitted by plaintiff).[1] Plaintiff opposed the motion on the basis that the fireman's rule did not apply to this accident and that he had not completed discovery. Notwithstanding the requirements of R. 1:7-4 and 4:46-2 requiring an oral statement of reasons or a written opinion, the trial judge merely entered an order granting defendant's motion. We therefore do not have the benefit of his reasoning.
In analyzing the case before us, we first realize that plaintiff had not completed discovery. We will therefore assume that the facts plaintiff would finally be able to prove are those he was expecting to discover, namely, that the alleged negligently maintained condition (the broken pipe and collection of water which would freeze at appropriate temperatures) had existed for some time. Perhaps there had even been prior accidents at the site, thus putting the owner on notice of the dangerous condition. We further must give plaintiff all reasonable inferences that can be drawn from the facts. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954).
*236 Defendant, however, might well assert that it should not be required to make any efforts to alleviate the slippery condition at 4:30 in the morning when it would be highly unlikely for any pedestrian to be on the property, since any implied invitation to the public would be limited to those hours just before the shopping center opened to just after it closed. Defendant might further claim that it was its policy to spread sand or salt over slippery areas of the parking lot before it opened in the morning and to inspect the lot during the day until the parking lot closed; thus it was not unreasonable to allow the slippery condition on the lot to go unattended at 4:30 a.m. Depending upon a jury's resolution of these factual issues, plaintiff may or may not prevail.
This case presents for adjudication, not a direct application of the fireman's rule, but rather a parallel issue never directly adjudicated in an appellate opinion, namely: What duty does a property owner owe to a police officer when the officer is investigating a situation not caused by the owner, and the accident occurs at a time when or location where no member of the public is expected to be present?
As noted in Mahoney v. Carus Chemical Co. Inc., 102 N.J. 564, 582 (1986):
Case law draws a distinction between injury stemming from the negligence that brought the firefighters or police to the scene in the first place, and injury suffered from independent causes that follow.
The Supreme Court, quoting from a California case where firefighters encountered dangerous chemicals after they were told there would be no toxic substances in the building, stated that "[a] fireman assumes only those hazards which are known or can reasonably be anticipated at the site of the fire." Id. at 582-583. See also Wietecha v. Peoronard, 102 N.J. 591, 595 (1986), a companion case to Mahoney, where the court reiterated "that independent and intervening negligent acts that injure the safety officer on duty are not insulated [by the fireman's rule]."
*237 In Berko v. Freda, 93 N.J. 81 (1983), the Court explained the basis for the fireman's rule and its inapplicability to the property owner's responsibility for conditions other than those which caused the officer to be called to the premises.
[T]he taxpayer who pays the fire and police departments to confront the risks occasioned by his own future acts of negligence does not expect to pay again when the officer is injured while exposed to those risks. Otherwise, individual citizens would compensate police officers twice: once for risking injury, once for sustaining it.... Of course, negligently-created risks that did not create the occasion for the firefighter's presence will give rise to a cause of action against the homeowner. [Id. at 88; emphasis supplied].
An additional application of this principle was stated in Mahoney v. Carus Chemical Co. Inc., supra, where the Court, after a lengthy discussion concerning the fireman's rule's exception for willful, wanton or intentional conduct, stated:
Plaintiff has carefully crafted the allegations of his complaint to seek to allege circumstances not covered by the `fireman's rule'.... We are satisfied that there are other allegations set forth in the complaint that raise triable issues of facts as to whether these defendants are excused from liability because of the `fireman's rule.' It may be that plaintiffs will not be able to demonstrate that, in fact, the injuries were the proximate result of the defendants' failure to warn of the structural makeup of the building or a hidden defect in that structure, or of its subsequent negligence in failing properly to combat the fire once it had commenced on the premises. Suffice it to say that those questions are for the finder of fact to resolve. [102 N.J. at 583; emphasis supplied].
See also Krauth v. Geller, 31 N.J. 270 (1960), where the court noted that liability could be imposed "for negligence with respect to conditions creating undue risks of injury beyond those inevitably involved in fire fighting." Krauth at 274.
While the cited Supreme Court cases have stated in dictum that a police or fire officer has a cause of action against a property owner, there has been no appellate definition of the responsibility owed by the property owner where the fireman's rule does not provide immunity. There are, however, reported Law Division decisions on this point. In two cases the judges mistakenly applied the fireman's rule and held that, based on the facts before them, the emergency personnel had no cause of action against the property owners. In a third decision, the *238 property owner was held liable to the officer. A fourth case, not strictly on this point, discusses the issue in dicta.
In Maryland Cas. Co. v. Heiot, 224 N.J. Super. 441 (Law Div. 1988), the court, applying an assumption of risk analysis suggested in Krauth, determined that the fireman's rule would bar an action against a property owner for accumulated ice on the edge of the front steps of defendant's house. The defendant had fallen from her walker inside the house and required emergency medical attention. When the firefighter determined that materials were needed from the ambulance, he exited the house and slipped on the ice. The judge determined that
[a] firefigher responding to such an emergency call has no reasonable expectation that the property has been made safe for his arrival. One engaged in this occupation does not determine whether to respond to an emergency call based on weather conditions. This is because a firefighter is likely to enter at unforeseeable times under emergent circumstances. In other words weather is one of the `inherent risks of (this) calling.' Cf. Krauth, supra, 31 N.J. at 274. [224 N.J. Super. at 444-445].
Under those circumstances, the judge determined that the case before her did "not present a situation where the landowner failed to warn of a hidden peril." Id. at 445.
In Williams v. Levitt, 213 N.J. Super. 604 (Law Div. 1986), the court took a different approach leading to the same result. There a police officer was injured while inspecting defendants' property after being summoned by a burglar alarm. While crossing the yard, the officer stepped into a hole hidden by the evenly-mowed grass. The court granted summary judgment, reasoning that a citizen seeking police aid should not "be expected to insure that no condition even remotely giving rise to liability exists before he calls upon them to render assistance." Id. at 607.
In both of these cases the defendants caused emergency assistance to be summoned without the opportunity to prepare their premises for a visitor. The elderly woman who fell from her walker could not be expected to have sanded the area near her steps before she summoned aid. The homeowner whose alarm sounded in the early morning could not be expected to *239 post warnings in areas of the yard where visitors would not be expected to walk.
In the third case, a police officer was injured when he fell on the stairs of defendant's premises and could not hold onto the handrail because it was too wide. The judge, disagreeing with both Williams and Maryland Casualty Co., held that the officer was owed the same duty as any other person on defendant's premises, and that the fireman's rule did not apply. Chipps v. Newmarket Condo Ass'n, 228 N.J. Super. 144 (Law Div. 1988).
The facts in none of these three cases provide a basis for application of the fireman's rule, since all of the property owners were free from negligence in causing the condition that brought the officer to the premises.[2] As was correctly recognized in Chipps, the fireman's rule does not encompass all injuries to a fire or police personnel. We note that police and fire officers have a special status, and a property owner's duty to them is not governed by precisely the same rules as the duties owed to all other persons.
Plaintiff in our case was injured in what during the day was a public lot; its public or private status at 4:30 a.m. is open to *240 question. At the time plaintiff was injured, the only reason he was there was to carry out his police duties. The very reason he was checking the "suspicious" vehicle was that at that time and location no member of the public was expected to be in the parking lot. Is the position of this officer really any different from the officer in Williams v. Levitt who responded to a burglar alarm and was walking across defendants' lawn, an area where a member of the public would not be expected to tread? A jury must answer this question. We must, therefore, define the defendant's common-law duty to an officer at such a time and place. We reiterate that the underlying principle is not the fireman's rule, which absolves only the tortfeasor who negligently created the conditions that brought the officer to the site.
Where the fireman's rule does not apply, a police or fire officer responding to a call or investigating a suspicious circumstance may be thought of as an invitee, licensee, or even a trespasser. When the officer is conducting his business where other members of the public are invited to be present for the business purposes of the owner, the officer is given the protections accorded to an invitee. Caroff v. Liberty Lumber Co., 146 N.J. Super. 353, 361 (App.Div. 1977), certif. den. 74 N.J. 266 (1977) (public officials in general); Walsh v. Madison Park Properties, Ltd., 102 N.J. Super. 134, 139 (App.Div. 1968) (fireman performing inspections); Oliver Brown Trucking, supra, 230 N.J. Super. at 123. Where the officer is in an area where or when the public is not expected, the duty owed the officer is akin to that owed to a licensee. The officer technically is neither an invitee nor a licensee, Krauth v. Geller, supra, 31 N.J. at 272; "his status [is] sui generis...." Id at 273. In fact, in many instances the officer, if not permitted by the nature of his or her duties to be at the particular location, would be a trespasser. The officer's official status however, affords a special protection which raises the status to that of a *241 licensee, but with some special limitations. Oliver Brown Trucking, supra, 230 N.J. Super. at 123-125.
If the property owner knows the officer is present, or where the officer's presence at that location is reasonably foreseeable, and an opportunity exists to warn him, a warning must be given concerning known dangers. The warning must be reasonable under the circumstances. It may be verbal, or by the posting of a sign or the placing of a saw-horse or a rubber cone. But where the officer's presence would not reasonably be expected, especially in emergency situations where there was no opportunity to warn, no warning is required. See Williams v. Levitt, supra. Police or fire officers responding in an emergency situation must be deemed to expect that the way has not been prepared for them in the same manner as for business invitees or even licensees whose presence is known or expected. On the other hand, where time and conditions exist where it would be reasonable that the owner would warn of a particular defect in the premises, then a failure to warn can be the basis for liability. Mahoney v. Carus Chemical Co. Inc., supra, 102 N.J. at 583. Compliance with this duty requires a case-by-case analysis. Krauth v. Geller, 31 N.J. at 273.
The language of the Court in Mahoney, quoted earlier, that liability may be premised upon "defendants' failure to warn of the structural makeup of the building or a hidden defect in that structure," 102 N.J. at 583, can be read as requiring a threshold showing that an opportunity existed for the owners to give verbal warning to the firefighters on the scene. Alternatively, before any more permanent warning would be required to be posted, there at least should have been proof that the owners would reasonably have expected someone to have been on the premises at that time and location.
This limited duty comports with the discussion in Krauth v. Geller, 31 N.J. at 274-275:

*242 Thus it has been held that a fireman may recover if the injurious hazard was created in violation of statute or ordinance.... So also, he has prevailed if the occupier failed to utilize an available opportunity to warn him of a hidden peril.... And the land occupier has been held where he failed to exercise due care with respect to the condition of places intended as a means of access by contemplated visitors.... [Citations omitted].
If liability for a negligently caused dangerous condition is predicated on the failure to warn an officer who was unexpectedly on the premises, if the owner was not "on the scene, there was no culpable failure to seize an opportunity to warn of a hidden danger." Id. at 275. We add that even if the owner is not on the scene, but the officer's presence might reasonably be expected at the time and place, a jury may also consider if some other warning should have been placed or given.
Therefore, in the case before us we determine that if plaintiff can show prior notice of the slippery condition of the affected portion of its parking lot, a jury should decide whether it was reasonable for defendant to have expected that anyone would walk over that area of the lot at 4:30 a.m. and, if so, whether defendant should have either corrected or reasonably warned of the condition.[3] Discovery should now be completed, and if issues of fact are then raised to support a prima facie case, the action should proceed to trial.
For the reasons stated, and notwithstanding the lack of a more specific record, the dismissal of plaintiff's complaint is reversed, and the matter is remanded to the Law Division for further proceedings.
NOTES
[1] We are able to glean from the uncontested but uncertified facts stated in plaintiff's expert's report and plaintiff's answers to interrogatories that the accident occurred at approximately 4:30 a.m., and that a broken downspout (which has since been repaired) allegedly caused water to accumulate in the area immediately behind a discount store at the rear of plaintiff's shopping center. Apparently, plaintiff intended to prove that the discharge of water from the broken downspout and the grade of the parking lot combined to cause the condition leading to plaintiff's accident.
[2] In a fourth Law Division case, Oliver Brown Trucking Co., Inc. v. Flexon Industries Corp., 230 N.J. Super. 117 (Law Div. 1988), the court applied the fireman's rule and held that firemen injured by inhaling noxious fumes could not successfully claim that the owner maintained a faulty sprinkler system or improperly stored chemicals which caused the fumes. 230 N.J. Super. at 120-121, 126. In reaching its decision, the court concluded that a faulty sprinkler system is "the very risk which the fireman assumes in fighting a fire" (Id. at 125), and that "the mere fact that combustible material was stored in the premises without a showing that its storage was somehow dangerous ... is not in itself negligence." Id. at 121. Whatever may be the merits of the explicit holding in Brown Trucking, (cf. Krauth, 31 N.J. at 274, and cases cited therein), it was a true application of the fireman's rule, since the claim based upon the failure to maintain the sprinkler system implicated the reason why the fire personnel were called to the scene. Had the system been operable, there would either have been no fire, or it would have posed less of a danger. In the course of its opinion, however, the court analyzed the more general duty owed by a property owner to a public safety officer. Id. at 123-125.
[3] Plaintiff further claims that discovery could lead to facts indicating defendant's failure at the time and place in issue to spread sand or salt, to fix the drain pipe, or to regrade the pavement, and that this conduct could be found to be wanton, willful or intentional, thus avoiding the fireman's rule. Mahoney v. Carus Chemical Co. Inc., supra, 574-579. But, as we have noted, plaintiff here can not invoke the fireman's rule since the alleged negligence of defendant was not the cause that brought plaintiff to the premises. Furthermore, these "wanton and willful" arguments are so attenuated that we need not further discuss them.